UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
05-CV-1299(JMR/FLN)

Richard William Schumacher   )
                             )
              v.             )        ORDER
                             )
Adam M. Halverson and the    )
City of Lino Lakes           )

This matter is before the Court on cross-motions for summary judgment.  Plaintiff claims defendants, Adam M. Halverson and the City of Lino Lakes, deprived him of his constitutional rights under color of law, and subjected him to state torts.  Plaintiff's motion for partial summary judgment asks the Court to apply the doctrine of collateral estoppel.  Defendants challenge the application of collateral estoppel, and seek summary judgment based on the doctrines of qualified and official immunity.  For the reasons set forth herein, plaintiff's motion is denied, and defendants' motion is granted.

I.   Factual Background[1]

     A.   Events

     At approximately 12:45 a.m., on June 27, 2004, after an evening of entertaining friends and consuming alcohol, plaintiff, Richard Schumacher, drove his DRZ250 Suzuki motorcycle around the cul-de-sac in front of his home in Lino Lakes, Minnesota.  At the

_____

     [1]The facts are either undisputed or viewed in the light most favorable to plaintiff.  Lambert v. City of Dumas, 187 F.3d 931, 934 (8th Cir. 1999).

same time, defendant Adam Halverson, a Lino Lakes Police Officer, drove into the area.  When plaintiff saw the police car, he turned quickly, drove off the road, and around to the back of the house.  Officer Halverson was unaware at the time that the property belonged to plaintiff.

Thinking plaintiff might be headed for a golf course located behind the house, Officer Halverson got out of his squad car and followed plaintiff on foot.  As he came around to the back of the house, he observed plaintiff trying to get into the house through a locked patio door on the deck.

Officer Halverson approached plaintiff and asked:  "What are you doing?"  He then stated:  "Stop, come over here."  Plaintiff refused to comply with Officer Halverson's request, saying he wanted to go into his house.  Officer Halverson then asked:  "Is that your bike?"  Plaintiff replied:  "What bike are you talking about?"

Plaintiff then made a second, unsuccessful, attempt to open the patio door, at which point Officer Halverson stepped onto the deck and grabbed him by the arm.  Upon doing so, Officer Halverson detected an odor of alcohol, and noticed plaintiff's speech was slurred.

Officer Halverson then directed plaintiff to accompany him to the front of the house.  Plaintiff refused, and jerked his arm away from Officer Halverson's grip.  Officer Halverson again tried to escort plaintiff from the deck to the front of the house.  As they

were going down the deck stairs, plaintiff again pulled away from Officer Halverson and stumbled.

Plaintiff and the Officer reached the front of the house, where Officer Halverson told him to get into his squad car. Plaintiff refused, telling Officer Halverson to leave him alone. At this point, plaintiff stepped away from Officer Halverson, grabbed the pole of a basketball backboard in the driveway, and stated that he did not want to leave his property. Officer Halverson told him to let go of the pole. Plaintiff refused, saying he wanted another officer present.

Officer Halverson unsheathed his taser gun at this point.[2] The parties agree Officer Halverson gave plaintiff three successive warnings, telling him that if he did not let go of the pole, he would use the weapon. Notwithstanding these warnings, plaintiff refused to release his grip. Officer Halverson fired the taser, using the device's minimum five-second burst. After the taser was fired, plaintiff fell to the ground, suffering superficial cuts and scrapes. Once plaintiff was on the ground, he was handcuffed without further incident.

Paramedics were called to the scene, but plaintiff declined

---

[2]Officer Halverson claims he initially attempted to break plaintiff's grip on the pole using his wrist, but was unsuccessful. Plaintiff denies any such effort was made by Officer Halverson. For purposes of this motion, the Court assumes plaintiff's recollection of events is correct.

3

any medical treatment for his cuts.[3]  He was transported to the
Lino Lakes Police Department, where he took a breathalyzer test
which revealed a 0.13 blood alcohol level.

Plaintiff was charged with fourth degree DWI; fourth degree
DWI with a blood alcohol concentration over 0.10; driving without
headlights; obstruction of legal process; disorderly conduct; and
having an unregistered vehicle on a roadway.  Plaintiff's driver's
license was revoked by Minnesota's Commissioner of Public Safety.

Plaintiff contested his license revocation in a civil implied
consent hearing against Minnesota's Commissioner of Public Safety.
The matter was heard in Anoka County District Court before the
Honorable Thomas Hayes on December 8, 2004.

Judge Hayes found Officer Halverson's stop was not supported
by probable cause, and reinstated plaintiff's driver's license.
The Court's Findings of Fact, Conclusions of Law and Order, issued
January 14, 2005, found "the warrantless search of [plaintiff's]
property was unreasonable," "the seizure of [plaintiff] was without
legal basis," and that Officer Halverson's "use of the taser was
neither reasonable nor necessary."  Richard William Schumacher v.
Commissioner of Public Safety, Anoka County District Court File No.
C9-04-7151.  Shortly after this decision, all criminal charges
against plaintiff were dismissed.

---

[3]Plaintiff has never sought medical or psychological treatment
for any effects he experienced from the use of the taser.

B.   <u>The Present Case</u>

Plaintiff brings this action under 42 U.S.C. § 1983, claiming Officer Halverson violated his Fourth Amendment right to be free from unreasonable search and seizure, and unreasonable use of force.  He asks the Court to exercise its supplemental jurisdiction under 28 U.S.C. § 1367, and hear his state tort claims of battery and assault.  Finally, plaintiff sues the City of Lino Lakes alleging municipal liability for his constitutional claims under <u>Monell</u>,[4] and vicarious liability for his state tort claims.

Plaintiff's motion for summary judgment argues defendants are collaterally estopped from relitigating issues adjudicated by Judge Hayes in his January 14, 2005, Order.  He further claims the Court should find Officer Halverson's warrantless entry onto the curtilage of his home, and his subsequent arrest, unconstitutional as a matter of law.

Defendants' motion for summary judgment argues that Officer Halverson is shielded by qualified immunity from plaintiff's constitutional claims, and by official immunity on the state tort claims.  Defendants further claim the City of Lino Lakes is protected by vicarious official immunity on the tort claims, and deny <u>Monell</u> liability, claiming there was no constitutional violation.

---

[4]<u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658 (1978)

II.   <u>Collateral Estoppel</u>

    A.   <u>Legal Background</u>

        1.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial.  <u>See</u> <u>Anderson</u>, 477 U.S. at 250; <u>see also</u> <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395-96 (8th Cir. 1992).  If the opposing party fails to carry that burden or fails to establish an essential element of its case, summary judgment should be granted.  <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

        2.   <u>Application of Collateral Estoppel</u>

Collateral estoppel precludes relitigation of an issue previously decided by a prior judgment.  <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980); <u>W.F.M., Inc. v. Cherry County</u>, 279 F.3d 640, 643(8th Cir. 2002); <u>Nelson v. Am. Family Ins. Group</u>, 651 N.W.2d 499, 511 (Minn. 2002).  A court may apply the doctrine where:

> (1) the issue was identical to one in a prior
> adjudication; (2) there was a final judgment on the
> merits; (3) the estopped party was a party or in privity
> with a party to the prior adjudication; and (4) the
> estopped party was given a full and fair opportunity to
> be heard on the adjudicated issue.

Willems v. Comm'r of Pub. Safety, 333 N.W.2d 619, 621 (Minn. 1983).

When determining whether to apply the doctrine, the court focuses on whether an injustice will be done to the party against whom collateral estoppel is urged. Johnson v. Consol. Freightways, Inc., 420 N.W.2d 608, 613-14 (Minn. 1988).

B.   Discussion

Plaintiff claims Judge Hayes's Order collaterally estops defendants from contesting his § 1983 unreasonable search and seizure claim (Count I), his § 1983 unreasonable use of force claim (Count II), and his state law tort claims of battery and assault (Counts V and VI, respectively).   According to plaintiff, Judge Hayes's Findings of Fact and Conclusions of Law foreclose Officer Halverson from relitigating these issues.   The Court does not agree.

1.   Identical Issues

In order for collateral estoppel to apply, the earlier court proceeding must have considered issues identical to those litigated here.   This did not occur.   The Anoka County case challenged the Commissioner of Public Safety's revocation of plaintiff's driver's license.   In making its determination, the Anoka County Court was statutorily limited to consideration of ten issues.   Minn. Stat. §

7

169A.53, subd. 3(b) (2003).[5]

Among those subjects, only one raises issues similar to the constitutional questions before this Court: whether plaintiff was lawfully arrested under Minnesota's DWI statute. Minn. Stat. § 169A.53, subd. 3(b)(2). The Court makes no finding as to whether that precise issue is presented here. The Court finds, however, that the question of license reinstatement does not encompass any essential determinations concerning constitutional claims of excessive force, or questions of battery or assault.

2.  <u>Final Judgment on the Merits</u>

The second factor before collateral estoppel can be invoked requires that the preceding matter have been resolved by a final

_____

[5]"The scope of the [implied consent] hearing is limited to [the following ten issues]: (1) Did the peace officer have probable cause to believe the person was driving . . . a motor vehicle in violation of [the driving while impaired (DWI) statute]?; (2) Was the person lawfully placed under arrest for violation of [DWI]?; (3) Was the person involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death?; (4) Did the person refuse to take a screening test . . . ?; (5) If the screening test was administered, did the test indicate an alcohol concentration of 0.10 or more?; (6) At the time of the request for the test, did the peace officer inform the person of his rights and the consequences of taking or refusing the screening test as required by [statute]?; (7) Did the person refuse to permit the test?; (8) If a test was taken by a person driving . . . a motor vehicle, did the test results indicate . . . an alcohol concentration of 0.10 or more or the presence of a controlled substance . . . ?; (9) If a test was taken by a person driving . . . a commercial motor vehicle, did the test results indicate an alcohol concentration of 0.04 or more . . . ?; and (10) Was the testing method used valid and reliable and were the test results accurately evaluated?" Minn. Stat. § 169A.53, subd. 3(b)(2003).

judgment on the merits.  As above, the only issue which may have been finally decided is the question of unlawful seizure.  The other issues were neither squarely before the court, nor were they necessary or essential to its decision to reinstate plaintiff's driver's license.  See Ellis v. Minneapolis Comm'n on Civil Rights, 319 N.W.2d 702, 704 (Minn. 1982).  The Commissioner apparently decided against pursuing his statutory right to appeal the Order.  Minn. Stat. § 169A.53, subd. 3(f) (2003).  Thus, assuming Judge Hayes decided the issue of unlawful seizure, his Order was final only insofar as it reinstated plaintiff's driving privileges.

    3.  Same Parties

Collateral estoppel may only be invoked against either a party, or one in privity with a party, to the prior adjudication. Privity is determined on a case-by-case basis.  Minnesota v. Victorsen, 627 N.W.2d 655, 660 (Minn. App. 2001).  Whether one is in privity with another depends on multiple factors, including fairness to the non-party, whether the non-party had control over the proceedings, whether the prior action affected the non-party's interests, and whether the actual party in the prior action sufficiently represented the interests of the present party. Kaiser v. Northern States Power Co., 353 N.W.2d 899, 907 (Minn. 1984); Victorsen, 627 N.W.2d at 661; Reil v. Benjamin, 584 N.W.2d 442, 445 (Minn. App. 1998).

The Eighth Circuit Court of Appeals considered the question of

privity in the context of a § 1983 action between a police officer
and a state in Duncan v. Clements.   744 F.2d 48 (8th Cir. 1984).
There, the plaintiff initially prevailed in a criminal proceeding
on his motion to suppress evidence based on illegal search and
seizure.   Id. at 51.   Later, in a civil suit against the police
officer, the plaintiff sought to bar the officer from relitigating
his previously-successful Fourth Amendment claim.   Id.   The Eighth
Circuit interpreted Missouri's law of collateral estoppel, a body
of law substantially similar to Minnesota's, and declined to estop
the officer for want of privity.   Id. at 52; see Willems, 333
N.W.2d at 621.

The Duncan court reasoned that the police officer's interests
in a criminal proceeding are not identical to the state's.
Criminal proceedings are designed to vindicate the public interest,
and an individual police officer has no personal interest in the
outcome.   Duncan, 744 F.2d at 52.   The Eighth Circuit found a mere
interest in the facts is insufficient to establish privity; privity
must exist "in relation to an identity of interests in the subject
matter of the litigation."   Id. (quotations omitted).

Similarly, this Court finds Officer Halverson was not in
privity with the Commissioner of Public Safety in the implied-
consent hearing.   The Commissioner represented the State of
Minnesota and its interest in revoking plaintiff's driver's
license.   The Commissioner had no interest in representing the

10

individual police officer involved in the arrest.  The implied
consent hearing dealt with plaintiff's driver's license; this case
concerns the personal and official liability of Officer Halverson
and the Lino Lakes Police Department.  See State v. Wagner, 637
N.W.2d 330, 337 (Minn. App. 2001) (holding party to implied consent
hearing not precluded from challenging validity of traffic stop in
later criminal proceeding).  Unlike the present defendants, during
the implied consent hearing there was never a question of the
Commissioner's having deprived anyone of constitutional rights or
the Commissioner's right to official immunity.  There is no privity
when such disparate interests are at stake.  See id.; Duncan, 744
F.2d at 52.

> ### 4.  Full and Fair Opportunity to be Heard

The fourth factor required before collateral estoppel can be
applied is whether the supposedly-estopped party had a full and
fair opportunity to be heard on the adjudicated issue.  Duncan
speaks to this question, too.  The Duncan court found the officer
had no full and fair opportunity to litigate his own issues at the
suppression hearing.  Duncan, 744 F.2d at 52.  The state did not
represent his interests; even though the officer testified as a
witness, he had no control over the criminal proceedings.  Id.  The
Duncan court emphasized this point by noting the officer's
inability to appeal the state court's decision.  Id.

The same is true here.  Defendants' interests were not

litigated at the implied consent hearing.  Although Officer
Halverson testified, neither he nor the City of Lino Lakes had any
measure of control over the Commissioner's case, the witness
selection, or any opportunity to present argument on their own
behalf.  Neither the Officer nor the City could appeal the implied
consent order.  This means the present defendants were without a
full and fair opportunity to be heard on the issues plaintiff now
asks this Court to estop them from litigating.

Even assuming the first and second factors of collateral
estoppel are satisfied as to the issue of unlawful seizure, the
third and fourth factors clearly are not.  Accordingly, collateral
estoppel does not apply.  Judge Hayes's Findings and Conclusions do
not bind this Court.  Plaintiff's motion for partial summary
judgment on collateral estoppel is accordingly denied.

II.  Qualified Immunity Bars § 1983 Claims

A.  Legal Background

When a police officer is entitled to qualified immunity, he
may be awarded summary judgment.  See Saucier v. Katz, 533 U.S.
194, 202 (2001).  Qualified immunity shields police officers from
suit for official acts as long as their conduct "does not violate
clearly established statutory or constitutional rights of which a
reasonable person would have known."  Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982).  A court must resolve qualified immunity
questions "at the earliest possible stage of litigation."  Gorra v.

Hanson, 880 F.2d 95, 97 (8th Cir. 1989).

The court's first inquiry when evaluating qualified immunity is whether "the facts alleged show the officer's conduct violated a constitutional right." Saucier, 533 U.S. at 201. If a violation is established, the court must determine whether the right was clearly established when the violation occurred. Id. A right is clearly established only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202; Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). If the court finds the right is clearly established, it must decide whether the officer's actions were objectively reasonable in light of the facts and circumstances. Saucier, 533 U.S. at 201. Unless the officer violated a clearly established constitutional right and the conduct is objectively unreasonable, qualified immunity applies. Gorra, 880 F.2d at 97.

B.  Discussion

Plaintiff claims Officer Halverson violated his Fourth Amendment right to be free from unlawful search and seizure when he walked onto plaintiff's deck and placed him under arrest. Plaintiff also claims Officer Halverson subjected him to unconstitutional excessive force by using a taser to force him to release his grip from the basketball pole. Upon review, the Court

13

finds no constitutional violation, making qualified immunity appropriate.

### 1.   No Illegal Seizure

The Fourth Amendment bars arrest without probable cause. See, e.g., Hill v. Scott, 349 F.3d 1068, 1072 (8th Cir. 2003). The Fourth Amendment does not, however, bar an investigatory stop based on reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 21 (1968); State v. Pike, 551 N.W.2d 919, 921 (Minn. 1996). The Minnesota Supreme Court has said, "[a]n actual violation of the vehicle and traffic laws need not be detectable" to warrant an investigatory stop. Pike, 551 N.W.2d at 921. An officer can make an investigative intrusion if he or she can show the encounter was based on "specific and articulable facts" that lead to rational inferences. State v. Johnson, 713 N.W.2d 64, 66 (Minn. App. 2006). When conducting an arrest or investigatory stop, an officer may use "some degree of physical coercion or threat thereof to effect [the arrest or stop]." Graham v. Connor, 490 U.S. 386, 396 (1989).

Under federal law, police officers are shielded from suit unless they "knowingly violate[d] the law" or were "plainly incompetent." Gorra, 880 F.2d at 97 (alteration in original) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Thus, an officer's arrest decision is not objectively unreasonable unless the officer lacked even arguable probable cause. See Gorra, 880 F.2d at 97. An officer's investigatory stop is not objectively

14

unreasonable unless it was the "product of mere whim, caprice or idle curiosity." <u>Pike</u>, 551 N.W.2d at 921.

After applying this law to these facts, the Court finds there was no constitutional violation during Officer Halverson's encounter with plaintiff.  The Officer followed a motorcycle after the driver turned away from him, jumped a curb, and drove onto a lawn and out of sight.  The Court has no difficulty finding that these occurrences would have been suspicious to a reasonable officer in the early morning hours.

In hindsight, we know the motorcycle driver owned the home he was trying to enter, but Officer Halverson had no evidence of this fact at the time; he saw only a man unsuccessfully attempting to enter a private home.  When asked about the motorcycle, the man denied even knowing of one.  After observing a person take flight, a possible effort to break and enter into a home, a possible burglary, and a highly ambiguous discussion concerning a motorcycle, Officer Halverson was fully justified in investigating the situation and attempting to identify the man before him.

On these facts, the Court finds Officer Halverson's investigatory stop was a "legitimate investigative function." <u>Terry</u>, 392 U.S. at 22.  When plaintiff refused to comply with Officer Halverson's order to "stop [and] come over here," the Officer was fully permitted to climb onto the deck, approach the man, and physically grab his arm to prevent him from going into the

house.  Terry, 392 U.S. at 7, 21.

Plaintiff claims Officer Halverson violated the Fourth Amendment when he stepped onto the house deck without a warrant, because the deck was part of the home's curtilage.  This argument fails.

As an initial matter, this entire argument is premised on the assumption that Officer Halverson knew the man he observed on the deck was the homeowner, when in fact he did not.  And absent the knowledge that plaintiff owned the house, Officer Halverson could not know it was plaintiff's curtilage.

Secondly, it is highly problematic whether the deck lay within the home's curtilage.  Curtilage is "the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life."  Oliver v. United States, 466 U.S. 170, 180 (1984) (internal quotations omitted).  The law recognizes four factors to be considered in determining curtilage:  (1) the proximity of the deck to the house; (2) whether the deck and house are within the same enclosure; (3) the nature and uses of the deck; and (4) the steps plaintiff took to protect the deck from being seen by others.  United States v. Gerard, 362 F.3d 484, 487 (8th Cir. 2004) (citing United States v. Dunn, 480 U.S. 294, 301 (1987)).

Although the deck was adjacent to the house, there is no indication plaintiff had any reasonable expectation of privacy

16

while using it.   The back of the house directly faces a golf course; the backyard is not enclosed by a fence or any structure to obstruct the public's view.   While golfers would not be expected in the middle of the night, there was still no visible barrier to anyone who might walk in the area, or indeed from any motorcyclist who might drive upon the links at that time.   The deck's open visibility is clear from Officer Halverson's observation of a man on the deck when he rounded the house looking for the motorcycle and its driver.

More importantly, Officer Halverson entered the deck for a legitimate law enforcement purpose.   "Where a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited."   United States v. Weston, 443 F.3d 661, 667 (8th Cir. 2006).   The Court finds it was reasonable for Officer Halverson to command an unidentified stranger to stop when seeing him attempt to enter a home in the middle of the night, and, when there was no compliance with this request, for him to briefly detain the stranger for purposes of identification.

Even assuming the deck was a private space, Officer Halverson made only a limited intrusion upon it in order to investigate the suspicious situation.   See Weston, 443 F.3d at 667.   As he approached plaintiff, Officer Halverson observed signs of

17

intoxication.  There is probable cause to arrest "when facts known to the officer are sufficient to make a reasonably prudent officer believe that the suspect is committing or has committed an offense."  Kiser v. City of Huron, 219 F.3d 814, 816 (8th Cir. 2000).  An officer may arrest a suspect based on probable cause for a public offense committed in his presence, regardless of whether the offense is a misdemeanor or felony.  Minn. Stat. § 629.34 subd. 1(c)(1)(2006); Windschitl v. Comm'r of Public Safety, 355 N.W.2d 146, 147 (Minn. 1984).  Having seen plaintiff driving a motorcycle, and having observed signs of intoxication, Officer Halverson had probable cause to effect a DWI arrest.  The Court finds there was no constitutional violation based upon these facts.  Accordingly, Officer Halverson is afforded qualified immunity on plaintiff's unreasonable search and seizure claim.  Plaintiff's motion for summary judgment on this claim is denied.

　　　2. No Excessive Force

Plaintiff claims Officer Halverson used excessive force when effectuating his arrest in violation of the Fourth Amendment. Excessive force claims are analyzed under an "objective reasonableness" standard.  Graham, 490 U.S. at 388.  The reasonableness of the force is viewed from the "on-scene perspective," recognizing that police officers must make split-second decisions under tense, uncertain circumstances, without the benefit of hindsight.  Saucier, 533 U.S. at 205.  "The

reasonableness of a particular use of force depends on the circumstances of each case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" <u>Wertish v. Krueger</u>, 433 F.3d 1062, 1066 (8th Cir. 2006) (quoting <u>Graham</u>, 490 U.S. at 396). Where a suspect repeatedly refuses to comply with an officer's lawful command, use of a taser has been found reasonable. <u>See, e.g.</u> <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1278 (11th Cir. 2004); <u>Russo v. City of Cincinnati</u>, 953 F.2d 1036, 1044-45 (6th Cir. 1994).

Here, the Court finds Officer Halverson's use of the taser was objectively reasonable. The Officer had probable cause to take plaintiff into custody for DWI, an offense that, depending on a suspect's criminal history, may rise to a felony. Minn. Stat. § 169A.24 (2006). At the time of the arrest, Officer Halverson did not know plaintiff's identity, his criminal history, or whether he was carrying a concealed weapon. Although plaintiff made no verbal threat, his continued physical and verbal resistance to commands, his intoxicated state, and the darkness of night created a threatening situation for the Officer.

Plaintiff told Officer Halverson he wanted another officer at the scene. Officer Halverson declined this request. The Court finds no support in law or in logic for plaintiff's request.

19

Officer Halverson had probable cause to arrest plaintiff for DWI, and he had no need for further assistance.  A person being placed under arrest has no right to prescribe the conditions under which he will comply with an officer's orders, or to demand the attendance of other police personnel.[6]

The Officer reasonably requested that plaintiff accompany him to his squad car in order to establish plaintiff's identity.  His request was met by plaintiff's recalcitrance in locking his arms around the basketball post and refusing to let go.  In doing so, plaintiff resisted the arrest.

Officer Halverson's response was measured, proportionate, and objectively reasonable.  He warned plaintiff three times that if he refused to release his grip on the pole, the taser would be used.  Plaintiff maintained his obdurate resistance.  The Officer then used the taser for a single minimum burst.  Officer Halverson's use of force permitted him to handcuff plaintiff; no other force was employed.  The taser did not cause any permanent physical injuries, and did not require any medical or psychological treatment as a result of the incident.  Wertish, 433 F.3d at 1067 (finding that an absence of permanent injury supported the conclusion that officer used reasonable force).

---

[6]At oral argument, the Court asked plaintiff's counsel for cases finding a legal duty to summon a second officer at the behest of a party for whom there was probable cause for arrest.  Counsel was unable to cite such a case.  The Court's own research has been similarly unavailing.

Plaintiff argues that the taser constituted excessive force because his resistance was merely passive. But Eighth Circuit law draws no distinction between active or passive resistance in resisting a police officer's requests. See e.g., id. at 1066-67 ("When a suspect is passively resistant, somewhat more force may reasonably be required [to effect an arrest]."); Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990) (finding no constitutional violation in officers' use of force to arrest suspect who resisted arrest by refusing to get out of his car and clinging to his car's door frame); Agee v. Hickman, 490 F.2d 210, 212 (8th Cir. 1974) (force may be used to overcome physical resistance). The Court has no difficulty, contrary to plaintiff's characterization, in finding plaintiff's resistance was active. But even if passive, the legal analysis of the use of force would not change.

Officer Halverson's use of a taser to effect plaintiff's arrest does not rise to a constitutional violation. Accordingly, Officer Halverson is entitled to qualified immunity as to plaintiff's claim of excessive force.

III.  Monell Claim

Plaintiff claims the City of Lino Lakes is liable because it had a policy tolerating the use of unconstitutional excessive force. This claim cannot be sustained.

To maintain a Monell claim in the face of a motion for summary

21

judgment, a plaintiff must show the existence of a municipal policy authorizing an unconstitutional act.  See <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690 (1978); <u>Kuha v. City of Minnetonka</u>, 365 F.3d 590, 606-07 (8th Cir. 2004).  Here, plaintiff argues the City of Lino Lakes had an unwritten policy allowing officers to use a taser against passively resistant subjects who pose no immediate threat.  This Court, however, has found the use of the taser in these circumstances to be reasonable and in accord with established constitutional principles.  Accordingly, plaintiff's <u>Monell</u> claim cannot survive summary judgment.

IV.  <u>Official Immunity and Vicarious Immunity Bar Liability on State Claims</u>

A.  <u>Legal Background</u>

Defendants claim they are shielded from plaintiff's state claims by official immunity and vicarious official immunity.  Officer Halverson claims he is entitled to official immunity, which shields government officials from liability for discretionary actions performed in the course of official duties.  See <u>Janklow v. Minnesota Bd. of Exam'rs for Nursing Home Adm'rs</u>, 552 N.W.2d 711, 716 (Minn. 1996).  Official immunity applies only to discretionary duties, as opposed to purely ministerial acts.  <u>Wiederholt v. City of Minneapolis</u>, 581 N.W.2d 312, 315 (Minn. 1998).  A discretionary action "involv[es] more individual professional judgment."  <u>Id.</u> Discretionary acts are contrasted with ministerial actions which are "absolute, certain, and imperative, involving merely the

execution of a specific duty arising from fixed and designated facts." Anderson v. Anoka Hennepin Indep. Sch. Dist., 678 N.W.2d 651, 656 (Minn. 2004). The Court recognizes that official immunity cannot be applied to an act that was willful or malicious. Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. App. 2001).

Likewise, the City of Lino Lakes claims vicarious official immunity. Generally, when an official has been granted immunity, the municipality is also dismissed from the lawsuit. Pletan v. Gaines, 494 N.W.2d 38, 42 (Minn. 1992). Whether or not official immunity extends to protect the employer is a policy question. Id. An employer enjoys vicarious official immunity when "the threat of liability against the government would unduly influence government employees from exercising independent judgment." S.L.D. v. Kranz, 498 N.W.2d 47, 51 (Minn. App. 1993).

B. Discussion

Officer Halverson's decision to arrest plaintiff and his decision to use force were clearly discretionary. The Minnesota Supreme Court has found an officer's conduct in making an arrest to be "precisely" the type of discretionary act covered by official immunity. Kelly v. City of Minneapolis, 598 N.W.2d 657, 665 (Minn. 1999). The Officer had both limited information about the situation and a wide range of options for dealing with plaintiff.

Plaintiff has failed to show Officer Halverson's acts were either malicious or willful. "The question of malice is an

objective inquiry into the legal reasonableness of an official's actions." Dokman, 637 N.W.2d at 296. As above, the Court finds Officer Halverson's actions were legally reasonable. As such, he is appropriately shielded from plaintiff's state tort claims by official immunity.

Because Officer Halverson is entitled to official immunity, the City of Lino Lakes is entitled to vicarious official immunity. Wiederholt, 581 N.W.2d at 316.

IV.   Conclusion

Accordingly, IT IS ORDERED that:

1.   Plaintiff's motion for partial summary judgment [Docket No. 18] is denied.

2.   Defendants' motion for summary judgment [Docket No. 11] is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 15th, 2006


     s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States Chief District Judge